# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| YUECHUAN SUN, derivatively on behalf of CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III,<br><br>Plaintiff,<br><br>v.<br><br>VIVEK GARIPALLI, JOSEPH WAGNER, ANDREW TOY, NATHANIEL S. TURNER, LEE SHAPIRO, CHAMATH PALIHAPITIYA, STEVEN TRIEU, IAN OSBORNE, JACQUELINE D. RESES, JAMES RYANS,<br><br>Defendants,<br><br>and<br><br>CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III,<br><br>Nominal Defendant. | Lead Case No. 3:21-cv-00311<br><br>Judge Aleta A. Trauger<br><br>**LEAD CASE** |
| MANTEG LUTHRA, derivatively on behalf of CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III,<br><br>Plaintiff,<br><br>v.<br><br>VIVEK GARIPALLI, JOSEPH WAGNER, ANDREW TOY, NATHANIEL S. TURNER, LEE SHAPIRO, CHAMATH PALIHAPITIYA, STEVEN TRIEU, IAN OSBORNE, JACQUELINE D. RESES, JAMES RYANS,<br><br>Defendants, | Case No. 3:21-cv-00320<br><br>Judge Aleta A. Trauger<br><br>**MEMBER CASE** |

and

CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III,

Nominal Defendant.

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement, dated February 2, 2024 ("Stipulation" or "Settlement"), is made and entered into by the following parties, by and through their respective counsel: Yuechuan Sun ("Sun") and Manteg Luthra ("Luthra"), plaintiffs in the above-captioned stockholder derivative actions (collectively, the "Tennessee Action") pending before this Court (the "Court"); Michael Fuhrman ("Fuhrman") and Eric Wiegand ("Wiegand"), plaintiffs in the stockholder derivative action captioned, *In re Clover Health Investments, Corp. Derivative Litigation*, Lead Case No. 1:21-cv-00191 (the "Delaware Federal Action"), pending in the U.S. District Court for the District of Delaware (the "Delaware Federal Court"); Sreecharan Sankaranarayanan ("Sankaranarayanan") and Zalmon Uvaydov ("Uvaydov"), plaintiffs in the stockholder derivative action captioned, *In re Clover Health Investments, Corp. Stockholder Derivative Litigation*, Index No. 655420/2021 (the "New York Action") pending in the Supreme Court of the State of New York, County of New York (the "New York Court"); Roland Davies ("Davies"), plaintiff in the stockholder derivative action captioned, *Davies v. Garipalli, et al.*, C.A. No. 2021-1016-SG (the "Delaware Chancery Action"), pending in the Delaware Court of Chancery ("Chancery Court") (Sun, Luthra, Fuhrman, Wiegand, Sankaranarayanan, Uvaydov, and Davies are referred to as "Plaintiffs," and the Tennessee Action, Delaware Federal Action, New York Action, and the Delaware Chancery Action are referred to as the "Actions"); individual defendants Vivek Garipalli ("Garipalli"), Andrew Toy ("Toy"), Chelsea Clinton ("Clinton"),

Nathaniel S. Turner ("Turner"), Lee A. Shapiro ("Shapiro"), Joseph Wagner ("Wagner"), Chamath Palihapitiya ("Palihapitiya"), Ian Osborne ("Osborne"), Jacqueline D. Reses ("Reses"), James Ryans ("Ryans"), and Steven Trieu ("Trieu") (collectively the "Individual Defendants"); and nominal defendant Clover Health Investments, Corp. ("Clover" or the Company," and together with the Individual Defendants, "Defendants") (Plaintiffs and Defendants are referred to as the "Parties").

This Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Actions and any and all Released Claims (as defined in paragraph 1.22 below) upon Court approval, subject to the terms and conditions hereof.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Actions assert claims for breach of fiduciary duty and related causes of action in connection with the merger of special purpose acquisition company ("SPAC") Social Capital Hedosophia Holdings Corp. III ("SCH") with Clover's predecessor, Clover Investments Corp. ("Legacy Clover"), and related post-merger conduct. Plaintiffs contend that, motivated by the prospect of unlocking gains of more than $320 million on "Founder Shares," the Individual Defendants induced shareholders to approve a de-SPAC merger with Legacy Clover through a series of misrepresentations about the nature, value, and regulatory risks of Legacy Clover's business model. Plaintiffs contend similar misrepresentations continued to be published following the merger.

Specifically, Plaintiffs allege that the Individual Defendants made, approved, or endorsed verbal and written statements touting the desirability and effectiveness of Legacy Clover's "Clover Assistant" software in an effort to differentiate the Company's value proposition in the Medicare Advantage insurance market, where competition from entrenched rivals with far greater market

reach and resources left Clover with poor growth prospects. Plaintiffs allege that, contrary to statements regarding Clover Assistant's potential for disrupting the Medicare Advantage insurance market by allowing primary care physicians to deliver personalized data-driven insights at the point of care and simplifying Medicare reimbursement, Clover Assistant did not improve care or make the Medicare reimbursement process more efficient, but was actually designed to induce physicians to "upcode" patient risk assessments, illicitly triggering more and higher reimbursements. Plaintiffs contend that Clover Assistant adoption rates were overstated, and that the healthcare providers who did use Clover Assistant and solicited patients to switch to Clover's insurance programs had received illicit payments and gifts distributed by "Clover Ambassadors," prompting an inquiry by the U.S. Department of Justice ("DOJ") into issues ranging from kickbacks and unlawful gifts, to illicit marketing practices, illicit risk upcoding, and undisclosed related party transactions with the New Jersey insurance brokerage responsible for a substantial portion of Clover's sales.

Plaintiffs contend that the Individual Defendants breached their fiduciary duties by (i) causing and/or permitting improper payments to be made to healthcare providers and their staff in violation of federal anti-kickback laws and Medicare Communications and Marketing's Guidelines; (ii) causing and/or permitting the development and utilization of Clover Assistant to defraud the federal government through unlawful upcoding and overbilling; (iii) engaging in and/or permitting deceptive marketing practices to mislead and induce seniors to purchase Company healthcare plans; (iv) engaging in, causing, and/or permitting undisclosed related party transactions with a field marketing organization responsible for a large majority of Clover's sales (collectively, the "Deceptive Sales Misconduct"); and (v) issuing and/or causing the Company to issue false and misleading statements regarding (a) the Deceptive Sales Misconduct; (b) Clover

Assistant's design and operation, adoption rates, and capabilities; (c) the existence and subject of the DOJ inquiry; (d) margin and sales growth attributed to Clover's value proposition; (e) the materiality of related party transactions omitted from consolidated financial statements in violation of Generally Accepted Accounting Principles ("GAAP"); and (f) the lack of adequate internal controls and oversight over disclosures, financial reporting, and regulatory compliance.[1] The Defendants deny any and all wrongdoing, and do not concede the truth of any of Plaintiffs' allegations or the validity of any of Plaintiffs' claims.

**A. The Tennessee Action**

On April 19, 2021, plaintiff Sun filed a Verified Shareholder Derivative Complaint asserting claims for breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets under Delaware law, for violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and for contribution under Sections 10(b) and 21D of the Exchange Act and Section 11(f) of the Securities Act of 1933, captioned *Sun v. Garipalli, et al.*, No. 3:21-cv-00311 (M.D. Tenn.) ("*Sun* Action").

On April 21, 2021, plaintiff Luthra filed a Shareholder Derivative Complaint predicated on similar allegations, captioned *Luthra v. Garipalli, et al.*, No: 3:21-cv-00320 (M.D. Tenn.) ("*Luthra* Action").

On May 7, 2021, the parties filed a stipulation and proposed order to consolidate the *Sun* Action and *Luthra* Action and to appoint The Brown Law Firm, P.C. (the "Brown Firm") and The

[1] A series of related securities class actions predicated on similar allegations were commenced in this Court and later consolidated under the caption, *Bond, et al. v. Clover Health Investments, Corp., et al.*, No. 3:21-cv-00096 (M.D. Tenn.) (the "Securities Action"). As of the date of this Stipulation, the proposed settlement of the Securities Action remains pending a final approval hearing scheduled for October 2, 2023. (Securities Class Action, ECF No. 132).

Rosen Law Firm, P.A. (the "Rosen Firm") as co-lead counsel for the Tennessee Plaintiffs (ECF No. 11), which the Court entered on May 10, 2021 (ECF No. 13).

On July 2, 2021, the Court entered a stipulated order staying the Tennessee Action pending a final decision on the defendants' motion to dismiss in the Securities Action (ECF No. 22). The order required the Company to produce to the Tennessee Plaintiffs any documents produced in response to another shareholder's related "'books and records' demand pursuant to Section 220 of the Delaware General Corporation Law, 8 Del. C. § 220" ("Section 220") or any other documents produced "to a plaintiff in a substantially similar shareholder derivative action or to plaintiffs in the [Securities Action,]" subject to "the execution of a confidentiality agreement governing [] use and disclosure[.]" *Id.* On October 11, 2021, the parties to the Tennessee Action entered into a confidentiality agreement. Shortly after the confidentiality agreement was executed, the Company provided documents that had been produced in response to a Section 220 inspection demand, which the Tennessee Plaintiffs reviewed.

On November 30, 2021, the Tennessee Plaintiffs filed a Verified Consolidated Shareholder Derivative Complaint leveraging the Section 220 documents and allegations in the first amended complaint filed in the Securities Action (the "Amended Complaint") (ECF Nos. 23, 25).

On June 10, 2022, the Company produced and the Tennessee Plaintiffs reviewed additional documents produced in response to a Section 220 inspection demand.

On March 24, 2023, following the denial of the motion to dismiss in the Securities Action, the Tennessee Plaintiffs informed the Court that the stay of the Tennessee Action had terminated, and asked the Court to set a deadline for Defendants to answer or otherwise respond to the Amended Complaint (ECF No. 27). On March 30, 2023, the parties submitted a stipulated proposed schedule, which the Court adopted on March 31, 2023 (ECF Nos. 28, 29). The order set

deadlines for briefing any motion to dismiss the Amended Complaint; provided for the production of all documents and written discovery produced, and transcripts of any depositions taken, in the Securities Action; and set January 31, 2024, as the deadline for service of all interrogatories and requests for the production of documents in the Tennessee Action. *Id.*

On April 4, 2023, the Company produced and the Tennessee Plaintiffs thereafter reviewed additional documents that had been produced in the Securities Action.

Thereafter, the Court entered a series of stipulated orders extending Defendants' time to move to dismiss the Amended Complaint to facilitate settlement negotiations and then temporarily staying proceedings to afford the Parties time to finalize an agreement in principle to settle the Actions and to prepare formal settlement documentation. (ECF Nos. 30-35).

### B. The Delaware Federal Action

On February 10, 2021, plaintiff Fuhrman filed a shareholder derivative complaint in the Delaware Federal Court alleging claims for breach of fiduciary duty and waste of corporate assets under Delaware law, and for violations of sections 10(b) and 21D of the Exchange Act against certain of the Individual Defendants, captioned *Fuhrman v. Garipalli, et al.*, No. 1:21-cv-00191-LPS ("*Fuhrman* Action") (*Fuhrman* Action, ECF No. 1).

On June 10, 2021, the *Fuhrman* parties filed a stipulation and proposed order (i) staying *Fuhrman* pending a final decision on the motion to dismiss the Securities Action; (ii) appointing Gainey McKenna & Egleston ("GM&E") interim lead counsel for plaintiff Fuhrman; and (iii) requiring Defendants to produce to plaintiff Fuhrman any documents produced to any other shareholder in response to a related Section 220 demand and any other documents produced to shareholders in related derivative actions or in the Securities Action, subject to the execution of a

confidentiality agreement governing use and disclosure. (*Fuhrman* Action, ECF No. 4). The Delaware Federal Court entered the stipulated order the following day.

On July 21, 2021, plaintiff Wiegand filed a substantially similar shareholder derivative complaint in the Delaware Federal Court captioned, *Wiegand v. Garipalli, et al.*, No. 1:21-cv-01053-LPS ("*Wiegand* Action").

On September 14, 2021, the Delaware Federal Action plaintiffs filed a stipulation and proposed order requesting, *inter alia*, that the Delaware Federal Court: (i) consolidate *Fuhrman* Action and *Wiegand* Action (forming the consolidated "Delaware Federal Action"); (ii) appoint GM&E and Levi & Korsinsky, LLP as co-lead counsel, and Bielli & Klauder, LLC as liaison counsel for the Delaware Federal Action plaintiffs; and (iii) stay the Delaware Federal Action (Delaware Federal Action, ECF No. 5). The Delaware Federal Court entered the requested order on September 16, 2021.

On October 7, 2021, the Delaware Federal Action plaintiffs and the Company entered into an agreement governing the confidential treatment and use of documents produced to other shareholders in related matters and to be provided to the Delaware Federal Action plaintiffs.

On or about October 11 and October 18, 2021, the Company provided the Delaware Federal Action plaintiffs with Section 220 documents that had been produced in response to another shareholders' inspection demand.

On April 19, 2022, the Delaware Federal Action plaintiffs filed a Verified Shareholder Consolidated Derivative Complaint leveraging the Section 220 documents (Delaware Federal Action, ECF Nos. 7, 8).

On April 29, 2022, the parties filed a stipulation and proposed order extending the temporary stay to July 28, 2022, which the Court granted (Delaware Federal Action, ECF Nos. 9, 10).

On June 10, 2022, the Company produced additional Section 220 documents, which the Delaware Federal Action plaintiffs reviewed and evaluated.

On August 4, 2022, the parties filed a stipulation and proposed order extending the temporary stay to facilitate continued settlement negotiations, following a global mediation session attended by parties to all of the related derivative Actions (Delaware Federal Action, ECF No. 12). The Court entered an order extending the stay of the Delaware Federal Action to November 2, 2022 (Delaware Federal Action, ECF No. 13).

On March 30, 2023, the parties filed a notice that the stay had terminated, along with a proposed order setting deadlines for Defendants to answer or otherwise move in response to the complaint (Delaware Federal Action, ECF No. 14).

Thereafter, the Court entered a series of stipulated orders extending Defendants' time to move to dismiss the Consolidated Derivative Complaint to facilitate settlement negotiations and then temporarily staying proceedings to afford the Parties time to finalize an agreement in principle to settle the Actions and to prepare formal settlement documentation. (Delaware Federal Action, ECF Nos. 16-18).

### C. The New York Action

On September 10, 2021, plaintiff Sankaranarayanan filed a shareholder derivative complaint in the New York Court asserting claims for breach of fiduciary duty and unjust enrichment under New York law against certain of the Individual Defendants, captioned *Sankaranarayanan v. Palihapitiya, et al.*, Index No. 655420/2021 ("*Sankaranarayanan* Action").

On October 15, 2021, plaintiff Sankaranarayanan filed a request for judicial intervention seeking assignment to the Commercial Division. The *Sankaranarayanan* Action was thereafter assigned to the Honorable Andrew Borrok, Commercial Division Part 53.

On November 18, 2021, the parties filed a stipulation and proposed order requesting that the New York Court temporarily stay proceedings to permit the parties to evaluate case management in light of developments in the related Securities, Tennessee, and Delaware Federal Actions.

On December 14, 2021, after negotiating the production of non-public, Board-level and related materials in response to a Section 220 demand to inspect Clover books and records, plaintiff Uvaydov filed a related shareholder derivative complaint in the New York Court, captioned *Uvaydov v. Palihapitiya, et al.*, Index No. 656978/2021 ("*Uvaydov* Action"), asserting claims for breach of fiduciary duty and related causes of action under New York law.

Following consultations among counsel, on February 2, 2022, the parties to the *Sankaranarayanan* Action and the *Uvaydov* Action filed a stipulation and proposed order consolidating the *Sankaranarayanan* Action and the *Uvaydov* Action and, providing for coordinated leadership among plaintiffs' counsel, acknowledging service, and temporarily staying further proceedings pending completion of consultations among the parties' counsel regarding case management and scheduling.

On August 19, 2022, the New York Court entered an order consolidating the *Sankaranarayanan* Action and the *Uvaydov* Action (forming the consolidated "New York Action"); appointing Robbins LLP as plaintiffs' lead counsel, the Law Offices of Thomas G. Amon as plaintiffs' liaison counsel, and establishing an executive committee consisting of Robbins LLP and Morris Kandinov LLP; and adopting the parties' service agreement.

The New York Court declined to stay further proceedings and instead scheduled a preliminary conference for November 16, 2022.

On November 3, 2022, the New York Action plaintiffs filed a Consolidated Shareholder Derivative Complaint for Breach of Fiduciary Duty and Unjust Enrichment (the "New York Complaint"), which supplemented the original *Sankaranarayanan* Action and *Uvaydov* Action's complaints' allegations leveraging the Section 220 documents secured by plaintiff Uvaydov.

On November 9, 2022, the New York Action plaintiffs filed a stipulation and proposed order for the production and exchange of confidential information, which the New York Court entered on November 29, 2022. Thereafter, in connection with the anticipated global mediation, the parties to the New York Action exchanged additional confidential information bearing on the merits of the claims and potential defenses to the New York Action, and related insurance matters, which ultimately included all documents produced in the related Securities Action.

In early November 2022, counsel for the parties to the New York Action met and conferred regarding case management and scheduling issues in anticipation of the preliminary conference then scheduled for November 16, 2022. Defendants in the New York Action requested that the New York Court adjourn the preliminary conference pending the outcome of motions for partial summary judgment in related insurance coverage litigation pending in the Chancery Court, which relief the New York Action plaintiffs did not oppose. The New York Court adjourned the preliminary conference. Thereafter, the parties participated in a status conference on November 30, 2022, following which the New York Court entered an order resetting the preliminary conference for February 28, 2023.

The parties met and conferred and submitted an agreed-to discovery and pre-trial schedule for the New York Court's consideration at the preliminary conference. At the preliminary

conference, the New York Court considered the parties' proposals for sequential briefing on a series of defense motions relating to jurisdiction, venue, and pleadings challenges, and defendants committed to producing to the New York Action plaintiffs all documents and written discovery and transcripts of any depositions taken in the related Securities Action. Clover subsequently made a number of productions, which counsel for the New York Action plaintiffs reviewed and evaluated in connection with preparation of an amended consolidated complaint and settlement discussions.

On April 24, 2023, the New York Court entered a case management order establishing deadlines for motions to dismiss, discovery, summary judgment, and other pre-trial matters. Among other matters, the case management order required defendants in the New York Action to serve any motion to dismiss the New York Complaint by May 5, 2023, set a compliance conference for August 14, 2023, and further required the parties to file a notice of issue/certificate of trial readiness on or before July 28, 2024.

On May 2, 2023, May 22, 2023, and July 5, 2023, the New York Court entered stipulated orders extending defendants' deadline to respond to the New York Complaint in order to facilitate the parties' ongoing mediator-supervised settlement negotiations. After the Parties executed a binding memorandum of understanding setting forth the material substantive terms of an agreement in principle to settle the Actions, the New York Court entered a stipulated order continuing the compliance conference to September 29, 2023, to provide the Parties time to resolve outstanding issues and to prepare a formal stipulation of settlement. The New York Court subsequently granted additional continuances to permit the Parties to finalize the Settlement.

### D. The Delaware Chancery Action

On June 14, 2021, plaintiff Davies issued a Section 220 demand to inspect Clover's books and records. Following negotiations and execution of a confidentiality agreement, on September 24, 2021, the Company produced non-public, Board-level materials. After analyzing the production, Davies sought additional documents. Clover made additional materials available on October 27 and November 4, 2021.

On November 30, 2021, plaintiff Davies filed a shareholder derivative complaint under seal in the Chancery Court, incorporating the Section 220 documents and other confidential information.

Clover sought a stay pending resolution of the motion to dismiss in the Securities Action, and on January 19, 2022, the parties submitted a stipulation providing for such a stay, which was entered as the order of the court.

On April 29, 2022, the parties to the Delaware Chancery Action filed a stipulation to extend the temporary stay, through July 28, 2022, to permit the parties to focus their efforts on the global mediation scheduled for July 19, 2022, which the court approved on May 5, 2022.

On May 15, 2023, the parties filed a joint status report regarding the continuing global settlement negotiations, and a proposed schedule for briefing on defendants' motion to dismiss.

Thereafter, the Court entered a series of stipulated orders extending Defendants' time to move to dismiss the Consolidated Derivative Complaint to facilitate settlement negotiations and then temporarily staying proceedings to afford the Parties time to finalize an agreement in principle to settle the Actions and to prepare formal settlement documentation.

### E. Settlement Negotiations

In July 2022, the Parties agreed to participate in an in-person global mediation session in New York City to attempt to resolve and settle the Actions (the "First Mediation"). The First Mediation was set for July 19, 2022 before Jed D. Melnick, Esq., an experienced JAMS ADR mediator (the "Mediator").

On July 8, 2022, counsel for the Parties commenced a series of exchanges of confidential information in anticipation of the First Mediation. Clover circulated a mediation statement addressing Plaintiffs' factual allegations and legal contentions, and outlining various pleadings challenges and substantive defenses. Plaintiff Davies submitted a mediation statement addressing the facts, legal claims and damages to the Company, and a settlement demand with monetary and non-monetary components, including proposals for corporate governance enhancements designed to prevent recurrence of the alleged wrongdoing. The Tennessee Plaintiffs and the Delaware Federal Action plaintiffs jointly submitted a settlement demand summarizing damages and proposing a settlement framework that included corporate governance enhancements and a monetary payment to the Company. The New York Action plaintiffs submitted a settlement demand letter on July 18, 2022 summarizing the facts bearing on various theories of liability and damages, and demanding monetary compensation for the Company and corporate governance reform.

The First Mediation took place as scheduled on July 19, 2022. By day's end it was clear that much more work would be required to reach a settlement agreement, and the Parties agreed to schedule a second mediation session.

On August 1, 2022, the Parties participated in a second day-long mediation session overseen by the Mediator ("Second Mediation"). Progress was made, but the Parties were unable

to reach agreement. The Parties agreed to continue their negotiations with the assistance of the Mediator.

In the months following the First and Second Mediations, the Parties continued to engage in hard fought, arm's-length settlement negotiations through e-mails and teleconferences, with the assistance of the Mediator. The negotiations regarding an appropriate remedial framework took many weeks. Once a mutually acceptable remedial framework was established, the Parties negotiated the details of the substantive consideration over the ensuing months. In the course of the negotiations, the Parties exchanged dozens of proposals and counter-proposals, carefully evaluated the implications of confidential information Clover shared with Plaintiffs' counsel regarding Clover's finances and operational performance, the available directors and officers liability insurance ("D&O insurance"), and developments in the related coverage litigation and Securities Action, and challenged each other's theories, allegations, and contentions of law and fact.

In early summer 2023, the Parties reached an agreement in principle regarding the material substantive consideration for the Settlement, and thereafter negotiated the terms of a memorandum of understanding, including, *inter alia*, release language and provisions for notice to shareholders. The Parties executed the memorandum of understanding on June 21, 2023.

After reaching agreement on the material substantive terms of the Settlement, the Parties, with the assistance of the Mediator, separately negotiated and reached an agreement regarding the attorneys' fees and expenses that would be payable to Plaintiffs' Counsel (defined in paragraph 1.19, *infra*) commensurate with the Settlement's substantial benefits, subject to the Court's approval. The Parties concurrently negotiated this Stipulation detailing the Settlement's operational terms and conditions.

## II. PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the Actions have substantial merit. Plaintiffs' entry into this Stipulation is not intended to be and shall not be construed as an admission or concession concerning the relative strength or merit of the claims alleged in the Actions. Plaintiffs and Plaintiffs' Counsel recognize and acknowledge, however, the significant risk, expense, and duration of continued proceedings necessary to prosecute the derivative claims against the Individual Defendants through trial(s) and possible appeals, and uncertain outcome and the risks of further litigation, problems of proof, and the significant costs and distractions such litigation would impose on the Company.

Plaintiffs' Counsel's conclusion that the Settlement serves the best interests of Clover and its stockholders is well-informed. Plaintiffs' Counsel have conducted extensive investigation and evaluation of the relevant facts and governing law, including, *inter alia*: (i) Clover press releases, transcripts of public statements, and filings with the U.S. Securities and Exchange Commission ("SEC"); (ii) securities analysts' reports and advisories, and business and financial media reports about the Company; (iii) the pleadings and orders in the related Securities Action; (iv) the applicable legal standards and relevant precedents under Delaware, New York, and the federal securities laws governing the claims and potential defenses; (v) documents produced in response to multiple Section 220 demands; (vi) documents produced in discovery in the Securities Action; (vii) additional confidential documents and information exchanged during the course of the Mediation sessions and subsequent settlement negotiations; (viii) the Company's corporate governance structures, matters bearing on the unique governance challenges facing entities created in de-SPAC mergers, and relevant governance best practices; and (ix) the ranges of potential recovery under multiple damages and disgorgement theories. Plaintiffs' Counsel learned more in

the dozens of face-to-face, written and telephonic mediation exchanges that led to the Settlement, during which facts were disputed, legal theories tested and questions of proof bearing on the merits, damages, and sources of recovery thoroughly vetted.

Based on Plaintiffs' Counsel's thorough review and analysis of the relevant facts, allegations, defenses, and controlling legal principles, Plaintiffs' Counsel believe that the Settlement is fair, reasonable, and adequate, and confers substantial benefits upon Clover and its stockholders.

## III. DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants deny that they have committed or engaged in any wrongdoing or violation of law whatsoever. Defendants further deny each and all of the claims and contentions alleged by Plaintiffs in the Actions. The Individual Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged in the Actions.

Defendants have concluded that it is desirable for the Actions to be fully and finally settled in the matter upon the terms and conditions set forth in this Stipulation, taking into account the uncertainty and risks inherent in complex litigation, the costs of defense, and the distraction of key members of management and the Board from the business of the Company. Defendants have, therefore, determined that it is in the best interests of Clover for the Actions to be settled in the manner and upon the terms and conditions set forth in this Stipulation. This Stipulation shall in no event be construed as or deemed to be evidence of an admission or concession by Defendants regarding any claim of fault, liability, wrongdoing or damage whatsoever.

## IV. INDEPENDENT DIRECTOR APPROVAL

Clover's Board of Directors (the "Board"), including its independent, non-employee members, have unanimously approved a resolution reflecting the Board's determination, in the good faith exercise of its business judgment, that the Settlement and each of its terms are fair and reasonable, that the Enhancements (defined in paragraph 1.11 *infra*) confer substantial benefits upon Clover and its stockholders, and that the Board's commitment to adopt, implement, and maintain the Enhancements for the Effective Term (defined in paragraph 1.10 *infra*) will serve Clover and its stockholders' best interests, and constitutes fair, reasonable and adequate consideration for the releases set forth herein. A copy of the Board's resolution has been provided to Plaintiffs' Counsel.

## V. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (for themselves and derivatively on behalf of Clover), by and through their respective attorneys of record, and the Individual Defendants and Clover, by and through their respective attorneys of record, that in consideration of the benefits flowing to the Parties from the Settlement, and subject to the approval of the Court, that the Released Claims shall be finally and fully compromised, settled, and released, and the Actions dismissed with prejudice and with full preclusive effect as to all Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

### 1. DEFINITIONS

As used in this Stipulation, the following terms have the meanings specified below:

1.1 "Actions" means the above-captioned consolidated shareholder derivative actions ("Tennessee Action") and the shareholder derivative actions captioned *In re Clover Health*

*Investments, Corp. Derivative Litigation*, Lead Case No. 1:21-cv-00191 pending in the U.S. District Court for the District of Delaware ("Delaware Federal Action"), *In re Clover Health Investments, Corp. Stockholder Derivative Litigation*, Index No. 655420/2021 pending in the Supreme Court of the State of New York County of New York ("New York Action"), and *Davies v. Garipalli, et al.*, C.A. No. 2021-1016-SG pending in the Delaware Court of Chancery ("Delaware Chancery Action").

1.2 "Board" means the Board of Directors of Clover as currently constituted.

1.3 "Clover" or the "Company" means nominal defendant Clover Health Investments, Corp., and its affiliates, subsidiaries, predecessors, successors, and assigns.

1.4 "Court" means the U.S. District Court for the Middle District of Tennessee.

1.5 "Current Clover Stockholders" means any Person or Persons who are record or beneficial owners of Clover stock as of the date of this Stipulation and who continue to own such Clover Stock through the date of the Settlement Hearing, excluding the Individual Defendants, the officers and directors of Clover, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Individual Defendants has or has had a controlling interest.

1.6 "Defendants" means the Individual Defendants and nominal defendant Clover.

1.7 "Defendants' Counsel" means Milbank LLP.

1.8 "Defendants' Released Claims" mean any and all manner of claims or causes of action (including known and Unknown Claims), whether based on federal, state, local, statutory or common law, in equity, or on any other law, rule, regulation, ordinance, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, including,

but not limited to, any claims for damages, injunctive relief, interest, attorneys' fees, expert, or consulting fees, and any and all other costs, expenses, or liabilities whatsoever, that could be asserted in any forum by any of the Released Persons against Defendants' Released Persons, arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Actions or the Released Claims. "Defendants' Released Claims" shall not include: (i) claims to enforce the terms of the Stipulation and/or the Judgment, or (ii) claims or causes of action of Clover against any of its current or former employees (other than current or former officers and directors), agents, or consultants arising out of any breach of an obligation, contractual or otherwise, owed to Clover or any of its affiliates.

1.9 "Defendants' Released Persons" means Plaintiffs, Plaintiffs' Counsel, and each and all of their past, present, or future family members, spouses, domestic partners, associates, officers, directors, stockholders, owners, members, representatives, employees, attorneys, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, general or limited partners or partnerships, personal or legal representatives, administrators, or any other Person or entity acting for or on behalf of any Plaintiff or any counsel for any Plaintiff, and each of their respective predecessors, successors, and assigns, Clover, and all Clover stockholders (solely in their capacity as Clover stockholders).

1.10 "Effective Date" means the date by which all of the events and conditions specified in section V (paragraph 6.1) have been met and occurred.

1.11 "Enhancements" means the corporate governance enhancements set forth in Exhibit A attached hereto, which the Company shall adopt, implement, and maintain, pursuant to and in accordance with this Stipulation.

1.12 "Final" means the expiration of time to appeal from the Judgment (defined in paragraph 1.14 *infra*), or if any appeal or other review of such Judgment is filed and not dismissed, after such Judgment is upheld on appeal in all material respects and is no longer subject to appeal, re-argument, or review by writ of certiorari; provided, however, that any appeal or proceeding seeking subsequent review pertaining solely to an order issued with respect to attorneys' fees, costs, or expenses shall not in any way delay or preclude the Judgment from becoming Final.

1.13 "Individual Defendants" means defendants Vivek Garipalli, Andrew Toy, Chelsea Clinton, Nathaniel S. Turner, Lee A. Shapiro, Joseph Wagner, Chamath Palihapitiya, Ian Osborne, Jacqueline D. Reses, James Ryans, and Steven Trieu.

1.14 "Judgment" means the [Proposed] Judgment Approving Settlement of Derivative Actions entered by the Court that dismisses the Tennessee Action pursuant to the Settlement, substantially in the form of Exhibit D attached hereto.

1.15 "Notice" means the Long-Form Notice of Pendency and Proposed Settlement of Stockholder Derivative Actions, and the Short-Form Notice of Proposed Settlement of Derivative Actions, substantially in the form of Exhibits C-1 and C-2 attached hereto.

1.16 "Parties" means Plaintiffs, Individual Defendants, and Clover.

1.17 "Person" means any natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof, any business or legal entity, and any spouse, heir, legatee, executor, administrator, predecessor, successor, representative, or assign of any of the foregoing.

1.18 "Plaintiffs" means Tennessee Plaintiffs (defined in paragraph 1.26 *infra*) Yuechuan Sun and Manteg Luthra, Delaware Federal Action plaintiffs Michael Fuhrman and Eric Wiegand,

New York Action plaintiffs Sreecharan Sankaranarayanan and Zalmon Uvaydov, and Delaware Chancery Action plaintiff Roland Davies.

1.19 "Plaintiffs' Counsel" means The Brown Law Firm, P.C. and The Rosen Law Firm, P.A., as co-lead counsel for the Tennessee Plaintiffs; GM&E and Levi & Korsinsky, LLP, as co-lead counsel for the Delaware Federal Action plaintiffs; Robbins LLP, as lead counsel for the New York Action plaintiffs, and Morris Kandinov LLP, as counsel for plaintiff Uvaydov; and Shuman, Glenn & Stecker and Long Law, LLC, as counsel for plaintiff Davies.

1.20 "Plaintiffs' Releasing Parties" means Plaintiffs, Clover, and each and every Clover stockholder, and their heirs, successors, representatives, assigns, and beneficiaries, and any Person or entity that could assert any of the Released Claims on their behalf.

1.21 "Preliminary Approval Order" means the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice entered by the Court that preliminarily approves the Settlement, authorizes the form and manner of providing notice of the Settlement to Current Clover Stockholders, and sets a date for the Settlement Hearing, substantially in the form of Exhibit B attached hereto.

1.22 "Released Claims" means any and all manner of claims or causes of action (including known and Unknown Claims), whether based on federal, state, local, or statutory or common law, in equity, or on any other law, rule, regulation, ordinance, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, including, but not limited to, any claims for damages, injunctive relief, interest, attorneys' fees, expert, or consulting fees, and any and all other costs, expenses, or liabilities whatsoever, that: (i) were asserted or could have been asserted derivatively in the Actions; (ii) would have been barred by *res judicata* had the

Actions been fully litigated to final judgment; (iii) have been, could have been, or could in the future be, asserted derivatively or by Clover directly in any forum or proceeding, against any of the Released Persons that concern, are based upon, involve, or arise out of, or relate to any of the subject matters, allegations, transactions, facts, events, occurrences, disclosures, representations, statements, omissions alleged, acts, failures to act, alleged mismanagement, misconduct, concealment, alleged misrepresentations, alleged violations of local, state or federal law, sale of stock, or other matters involved, set forth, or referred to in the complaints in the Actions; or (iv) arise out of, relate to, or concern the defense, settlement, or resolution of the Actions or the Released Claims. "Released Claims" shall not include: (i) claims to enforce the terms of the Stipulation and/or the Judgment; (ii) exclusively direct claims (i.e., as opposed to derivative claims) Clover stockholders other than Plaintiffs may have in an individual capacity against Defendants; (iii) claims or causes of action of Clover against any of its current or former employees (other than current or former officers and directors), agents, or consultants arising out of any breach of an obligation, contractual or otherwise, owed to Clover or any of its affiliates; (iv) direct claims made in the Securities Action; or (v) claims any Plaintiff may have as a member of the class represented in the Securities Action pursuant to any plan of allocation as may be approved by the Court.

1.23 "Released Persons" means Defendants, Defendants' Counsel and each and all of their past, present, or future family members, spouses, domestic partners, associates, affiliates, subsidiaries, parents, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations,

general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other Person or entity acting or purporting to act for or on behalf of any Defendant, and each of their respective predecessors, successors, and assigns.

1.24 "Settlement" means the settlement and compromise of the Actions as provided for in this Stipulation.

1.25 "Settlement Hearing" means the hearing set by the Court to consider final approval of the Settlement.

1.26 "Tennessee Plaintiffs" means plaintiffs Yuechuan Sun and Manteg Luthra.

1.27 "Tennessee Plaintiffs' Counsel" means The Brown Law Firm, P.C. and The Rosen Law Firm, P.A., as co-lead counsel for the Tennessee Plaintiffs.

1.28 "Unknown Claims" means any Released Claim(s) that any of the Plaintiffs Releasing Parties or the Released Persons does not know of or suspect to exist in his, her, or its favor at the time of the release, including claims that, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons or Defendants' Released Persons or might have affected his, her, or its decision whether to object to this Settlement. With respect to any and all Released Claims and Defendants' Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Plaintiffs Releasing Parties and the Released Persons shall expressly waive and relinquish, and each Current Clover Stockholder shall be deemed to have and by operation of the Judgment shall have expressly waived and relinquished to the fullest extent permitted by law, the provisions, rights and benefits conferred by and under California Civil Code § 1542, and any other law of the United States or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Plaintiffs Releasing Parties and Released Persons acknowledge that they and Current Clover Stockholders may hereafter discover facts in addition to or different from those now known or believed to be true by them, with respect to the subject matter of the Released Claims and Defendants' Released Claims, but it is the intention of the Parties that the Plaintiffs Releasing Parties, the Released Persons, and all Current Clover Stockholders shall be deemed to and by operation of the Judgment shall completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all Released Claims and Defendants' Released Claims, known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which do now exist, or heretofore existed, or may hereafter exist, upon any theory of law or equity now existing or coming into existence in the future, and without regard to the subsequent discovery of additional or different facts. The Parties acknowledge that the foregoing waiver was separately bargained for and is a key element of the Stipulation of which this release is a part.

**2. TERMS OF THE SETTLEMENT**

2.1 The Board shall adopt and oversee the implementation and operation of the Enhancements set forth in Exhibit A hereto, using reasonable best efforts to adopt and incorporate them within sixty (60) days of the Effective Date, unless otherwise specified in Exhibit A.

2.2 The Board acknowledges and agrees that the filing of, pendency of, and settlement demands made in the Actions, were substantial and material factors in the Board's decision to adopt, implement, and/or maintain the Enhancements.

2.3 The Board and/or the Company shall adopt such resolutions, amend such committee charters, and adopt or amend any policies or procedures as necessary to fully and faithfully implement the Enhancements.

2.4 The Enhancements shall remain in effect until the earlier of (i) forty-two (42) months following the Effective Date, and (ii) the next date, if any, when the Company is no longer listed on a national securities exchange (the "Effective Term").

2.5 The Board further acknowledges and agrees that (i) the Enhancements confer substantial benefits on the Company and Current Clover Stockholders; and (ii) the Board's commitment to adopt, implement, and maintain the Enhancements for the Effective Term will serve the Company and Current Clover Stockholders' best interests, and constitutes fair, reasonable and adequate consideration for Plaintiffs' Releasing Parties' agreement to release the Released Claims.

2.6 The Enhancements shall be construed and implemented in a manner consistent with applicable federal, state and local laws, rules, regulations and policies, including, without limitation, applicable fiduciary duties ("Applicable Law"). In the event the Board determines, based upon sound legal advice, that any element of the Enhancements must be modified or repealed to conform to Applicable Law, the Board shall, in the good faith exercise of its informed business judgment, endeavor to adopt a substitute designed to accomplish the purpose(s) of the repealed policy or measure. Any such changes shall be described and explained in the Company's next regularly scheduled periodic report on SEC Quarterly Report on Form 10-Q or Annual Report on Form 10-K. Clover represents that it is presently unaware of any such conflicts with Applicable Law that would require the modification or repeal of any of the Enhancements.

### 3. APPROVAL AND NOTICE

3.1 As soon as practicable, the Tennessee Plaintiffs shall submit this Stipulation together with its exhibits to the Court and shall jointly apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit B attached hereto, requesting: (i) preliminary approval of the Settlement set forth in this Stipulation; (ii) approval of the form and manner of providing notice of the Settlement to Current Clover Stockholders substantially in the forms attached hereto as Exhibits C-1 ("Long-Form Notice") and C-2 ("Short-Form Notice") (the Long-Form Notice and the Short-Form Notice are collectively referred to as "Notice"); and (iii) a date for the Settlement Hearing. Promptly thereafter, the applicable Parties shall notify the courts in which the other Actions are pending of such submission.

3.2 Within ten (10) business days after the entry of the Preliminary Approval Order, Clover shall: (1) post a copy of the Long-Form Notice and the Stipulation and exhibits thereto on the Investor Relations page of the Company's website; (2) publish the Short-Form Notice in *Investor's Business Daily* and issue a press release with *GlobeNewswire*; and (3) file with the SEC the Long-Form Notice and Stipulation and exhibits thereto as exhibits to an SEC Current Report on Form 8-K. The Notice shall provide a link to the Investor Relations page on Clover's website where the Long-Form Notice and Stipulation and exhibits thereto may be viewed, which page will be maintained through the date of the Settlement Hearing. Clover shall be solely responsible for paying the costs and expenses related to providing notice of the Settlement set forth in this paragraph or as otherwise required by the Court. The Parties believe the form and manner of notice set forth in this paragraph constitute adequate and reasonable notice to Current Clover Stockholders pursuant to applicable law and due process. Clover shall timely file a declaration or

affidavit confirming compliance with the Court-ordered notice not less than fourteen (14) business days before the Settlement Hearing.

3.3 Pending the Court's determination as to final approval of the Settlement, Plaintiffs and Current Clover Stockholders are barred and enjoined from commencing, instituting, or prosecuting any of the Released Claims against any of the Released Persons.

**4. ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

4.1 After negotiating the material substantive terms of the Settlement, Plaintiffs' Counsel and counsel for Clover, with the assistance of the Mediator, separately negotiated a reasonable amount in attorney's fees and expenses to be paid to Plaintiffs' Counsel commensurate with the value of the substantial benefits conferred upon Clover and Current Clover Stockholders through the Enhancements and the risks assumed by Plaintiffs' Counsel in pursuing the Actions on a wholly contingent basis. Clover, acting by and through its Board, has agreed that Plaintiffs' Counsel are entitled to an award of reasonable attorneys' fees and expenses in the amount of $2,500,000.00 (the "Fee and Expense Amount").

4.2 Clover shall pay, or cause to be paid, the Fee and Expense Amount to an account or accounts designated by Plaintiffs' Counsel within thirty (30) days after the date of entry of the Preliminary Approval Order, subject to Plaintiffs' Counsel's timely transmission of wire instructions and tax identification numbers. The funds shall be releasable immediately upon entry of an order granting final approval of the Settlement and approving the Fee and Expense Amount or such other amount as may be awarded by the Court, notwithstanding the existence of any timely files objection(s) thereto, or appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's several obligation to make appropriate refunds of payments within thirty (30) days if, and when, as a result of any appeal and/or further proceedings on remand,

or successful collateral attack, approval of the Settlement is denied or overturned, or the Fee and Expense Amount is reduced.

4.3 The Fee and Expense Amount shall be allocated pursuant to agreement among Plaintiffs' Counsel, and no Defendant shall have any responsibility for that allocation. Any disputes regarding allocation of the Fee and Expense Amount among Plaintiffs' Counsel will be finally resolved by the Mediator pursuant to expedited arbitral procedures determined by the Mediator.

4.4 Plaintiffs' Counsel may apply to the Court for service awards of up to three thousand dollars ($3,000.00) for each of the Plaintiffs to be paid from the Fee and Expense Amount in recognition of Plaintiffs' participation and effort in the initiation, prosecution, and settlement of the Actions (the "Service Awards"). Defendants shall take no position with respect to service awards in this amount. The Court's decision regarding whether to approve, in whole or in part, any proposed service award, shall have no effect on the Settlement.

4.5 The Court's decision regarding whether to approve the Parties' agreement with respect to the award of attorneys' fees and costs is not a necessary term of this Settlement, and it is not a condition of this Settlement that Plaintiffs' Counsel's application(s) for such fees and costs be approved by the Court in the amount of the Fee and Expense Amount or in any other amount.

**5. RELEASES**

5.1 Within five (5) days after the Effective Date, the Plaintiffs to the Delaware Federal Action, the New York Action, and the Delaware Chancery Action shall file the appropriate documents in their respective actions to voluntarily dismiss the respective actions with prejudice.

5.2 Upon the Effective Date, the Plaintiffs' Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and

discharged the Released Claims against the Released Persons. Plaintiffs' Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any Released Person with respect to any Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting the Released Claims against the Released Persons except to enforce the releases and other terms and conditions contained in the Stipulation and/or the Judgment.

5.3 Upon the Effective Date, the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of Defendants' Released Persons from Defendants' Released Claims. The Released Persons shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue Defendants' Released Persons with respect to any of Defendants' Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting Defendants' Released Claims against Defendants' Released Persons except to enforce the releases and other terms and conditions contained in the Stipulation and/or the Judgment.

**6. CONDITIONS OF SETTLEMENT; EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION**

6.1 The Effective Date of this Stipulation shall be conditioned on the occurrence of all of the following events:

a. Court approval of the content and method of providing notice of the proposed Settlement to Current Clover Stockholders, and the subsequent dissemination of the notice of the proposed Settlement to Current Clover Stockholders;

b. Court entry of the Judgment, in all material respects in the form set forth as Exhibit D annexed hereto, approving the Settlement and dismissing the Tennessee Action with prejudice, without awarding costs to any party, except as provided herein;

c. payment of the Fee and Expense Amount in accordance with paragraph 4; and

d. the passing of the date upon which the Judgment becomes Final.

6.2 If any of the conditions specified above in paragraph 6.1 are not met, then this Stipulation shall be canceled and terminated subject to paragraph 6.3, unless the Parties or their respective counsel mutually agree in writing to proceed with this Stipulation.

6.3 If for any reason the Effective Date of this Stipulation does not occur, or if this Stipulation is in any way canceled, terminated or fails to become Final in accordance with its terms: (a) all Parties shall be restored to their respective positions in the Actions as of the date of this Stipulation; (b) all releases delivered in connection with this Stipulation shall be null and void, except as otherwise provided for in this Stipulation; (c) the Fee and Expense Amount paid to Plaintiffs' Counsel shall be refunded and returned within thirty (30) days; and (d) all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed or construed to be an admission by a Party of any act, matter, or proposition, and shall not be used in any manner for any purpose in any subsequent proceeding in the Actions or in any other action or proceeding. In such event, the terms and provisions of this Stipulation shall have no further force and effect with respect to the Parties and shall not be used in the Actions or in any other proceeding for any purpose.

**7. MISCELLANEOUS PROVISIONS**

7.1 The Parties: (i) acknowledge that it is their intent to consummate the Settlement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Settlement and to exercise their reasonable best efforts to accomplish the

foregoing terms and conditions of the Settlement. In the event that any dispute arises between the Parties regarding such efforts, they shall attempt to resolve the dispute in good faith.

7.2 In the event that any part of the Settlement other than paragraphs 2.1 through 2.4, 2.6, and 5.1 through 5.3 is found to be unlawful, void, unconscionable, or against public policy by a court of competent jurisdiction, the remaining terms and conditions of the Settlement shall remain intact.

7.3 The Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Actions and any and all claims released herein.

7.4 Nothing in this Stipulation, or any other settlement-related documents or communications, constitutes an admission that any claim which was brought or could have been brought in the Actions has or lacks any merit whatsoever.

7.5 Neither this Stipulation, nor any of its terms or provisions, nor entry of the Judgment (defined herein), nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement, is, may be construed as, or may be used as evidence of the validity of any of the claims released herein or an admission by or against the Individual Defendants of any fault, wrongdoing, or concession of liability whatsoever.

7.6 Defendants may file this Stipulation and/or the Judgment in any action that has or may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.7 This Stipulation may not be terminated, modified, or amended, except by an agreement in writing signed by the Parties or their respective counsel.


Case 3:21-cv-00311 Document 47-2 Filed 06/06/24 Page 33 of 41 PageID #: 880

7.8 This Stipulation shall be construed as if the Parties collectively prepared it, and any uncertainty or ambiguity shall not be interpreted against any of the Parties.

7.9 This Stipulation shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Delaware, and shall be governed by, construed, and enforced in accordance with the laws of the State of Delaware without regard to any state's principles, policies, or provisions governing choice of law.

7.10 This Stipulation and the exhibits attached hereto contain the entire understanding of the Parties concerning the subject matter hereof and supersede any and all prior agreements, discussions, or negotiations of the Parties, whether oral or in writing.

7.11 The exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein. In the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit hereto, the terms of this Stipulation shall prevail.

7.12 This Settlement may be executed in any number of counterparts with the same effect as if all Parties had executed the same document. All such counterparts shall be construed together and shall constitute one instrument. A facsimile or electronic (e.g., PDF format) copy of this Settlement as executed shall be deemed an original.

7.13 The Parties agree that each Party and their counsel has complied with the applicable requirements of good faith litigation and that no action, allegation, position taken, or filing was undertaken or made in bad faith or in violation of Rule 11 of the Federal Rules of Civil Procedure or a comparable provision of state law.

7.14 No representations, warranties, or inducements have been made to any of the Parties concerning this Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. The undersigned counsel represent

and warrant that they have authority to enter into this Stipulation on behalf of the respective Parties whom they represent.

7.15 In the event any proceedings by or on behalf of Clover, whether voluntary or involuntary, are initiated under any chapter of the United States Bankruptcy Code, including an act of receivership, asset seizure, or similar federal or state law action ("Bankruptcy Proceedings"), the Parties agree to use their reasonable best efforts to obtain all necessary orders, consents, releases, and approvals for effectuation of this Stipulation in a timely and expeditious manner. In the event of any Bankruptcy Proceedings by or on behalf of Clover, the Parties agree that all dates and deadlines set forth herein will be extended for such periods of time as are necessary to obtain necessary orders, consents, releases and approvals from the bankruptcy court to carry out the terms and conditions of the Stipulation.

7.16 Any planned, proposed, or actual sale, merger, or change-in-control of Clover shall not void this Stipulation. The Stipulation shall run to the Parties' respective successors-in-interest. In the event of a planned, proposed, or actual sale, merger, or change-in-control of Clover, the Parties shall continue to seek court approval of the Settlement expeditiously, including without limitation the Settlement terms reflected in this Stipulation and the Fee and Expense Amount.

7.17 Any dispute arising out of or relating to the Settlement shall be finally determined and resolved by the Mediator according to the expedited procedures determined by the Mediator. Each party shall bear their own costs and expenses in connection with any mediation or arbitral proceedings set forth herein.

7.18 Except with respect to the Court-approved Notice, the Parties may agree to reasonable extensions of time to carry out the provisions of this Stipulation without further order of the Court.

7.19 Without affecting the finality of the Judgment, the Court shall retain jurisdiction to implement and enforce the terms of the Stipulation and the Judgment and to consider any matters or disputes arising out of or relating to the Settlement, and the Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation and Judgment, and for matters or disputes arising out of or relating to the Settlement.

IN WITNESS WHEREOF, the Parties have caused the Stipulation to be executed by their duty authorized attorneys.

**IT IS HEREBY AGREED** by the undersigned as of February 2, 2024.

**THE BROWN LAW FIRM, P.C.**

Timothy Brown
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
E-mail: tbrown@thebrownlawfirm.net

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
E-mail: pkim@rosenlegal.com

*Co-Lead Counsel for Tennessee Action Plaintiffs Yuechuan Sun and Manteg Luthra*

**GAINEY MCKENNA & EGLESTON**
Thos. J. McKenna

Thomas J. McKenna by DS w/p
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: 212-983-1300
E-mail: TJMcKenna@gme-law.com
gegleston@gme-law.com

**LEVI & KORSINSKY, LLP**
Gregory M. Nespole
Correy A. Suk
Daniel Tepper
55 Broadway, Suite 427
New York, NY 10006
Telephone: 212-363-7171
E-mail: gnespole@zlk.com
ckamin@zlk.com
dtepper@zlk.com

*Counsel for Delaware Federal Action Plaintiffs Michael Fuhrman and Eric Wiegand*

**MILBANK LLP**

Scott A. Edelman
Jed M. Schwartz
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
E-mail: sedelman@milbank.com
jschwartz@milbank.com

*Attorneys for Defendants Vivek Garipalli, Joseph Wagner, Andrew Toy, Nathaniel S. Turner, Lee Shapiro, Chamath Palihapitiya, Steven Trieu, Ian Osborne, Jacqueline D. Reses, James Ryans, and Nominal Defendant Clover Health Investments. Corp.*

**THE BROWN LAW FIRM, P.C.**

Timothy Brown
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
E-mail: tbrown@thebrownlawfirm.net

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
E-mail: pkim@rosenlegal.com

*Co-Lead Counsel for Tennessee Action Plaintiffs Yuechuan Sun and Manteg Luthra*

**GAINEY MCKENNA & EGLESTON**

Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: 212-983-1300
E-mail: TJMcKenna@gme-law.com
gegleston@gme-law.com

**LEVI & KORSINSKY, LLP**
Gregory M. Nespole
Correy A. Suk
Daniel Tepper
55 Broadway, Suite 427
New York, NY 10006
Telephone: 212-363-7171
E-mail: gnespole@zlk.com
ckamin@zlk.com
dtepper@zlk.com

*Counsel for Delaware Federal Action Plaintiffs Michael Fuhrman and Eric Wiegand*

**MILBANK LLP**

Scott A. Edelman
Jed M. Schwartz
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
E-mail: sedelman@milbank.com
jschwartz@milbank.com

*Attorneys for Defendants Vivek Garipalli, Joseph Wagner, Andrew Toy, Nathaniel S. Turner, Lee Shapiro, Chamath Palihapitiya, Steven Trieu, Ian Osborne, Jacqueline D. Reses, James Ryans, and Nominal Defendant Clover Health Investments, Corp.*

**ROBBINS LLP**

______________________________
Craig W. Smith
Brian J. Robbins
Shane P. Sanders
Michelle B. Gaulin
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
E-mail: brobbins@robbinsllp.com
csmith@robbinsllp.com
ssanders@robbinsllp.com
mgaulin@robbinsllp.com

*Counsel for New York Action Plaintiffs Sreecharan Sankaranarayanan and Zalmon Uvaydov*

**MORRIS KANDINOV LLP**

______________________________
Aaron T. Morris
Andrew W. Robertson
1740 Broadway, 15th Floor
New York, NY 10019
Telephone: (877) 216-1552
E-mail: aaron@moka.law
andrew@moka.law

Leo Kandinov
550 West B Street, 4th Floor
San Diego, CA 92101
Telephone: (877) 216-1552
E-mail: leo@moka.law

*Additional Counsel for New York Action Plaintiff Zalmon Uvaydov*

**SHUMAN, GLENN & STECKER**

By: ______________________________
Rusty E. Glenn
600 17th Street, Suite 2800 South
Denver, CO 80202
Telephone: (303) 861-3003

**ROBBINS LLP**

______________________________
Craig W. Smith
Brian J. Robbins
Shane P. Sanders
Michelle B. Gaulin
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
E-mail: brobbins@robbinsllp.com
csmith@robbinsllp.com
ssanders@robbinsllp.com
mgaulin@robbinsllp.com

*Counsel for New York Action Plaintiffs Sreecharan Sankaranarayanan and Zalmon Uvaydov*

**MORRIS KANDINOV LLP**

______________________________
Aaron T. Morris
Andrew W. Robertson
1740 Broadway, 15th Floor
New York, NY 10019
Telephone: (877) 216-1552
E-mail: aaron@moka.law
andrew@moka.law

Leo Kandinov
550 West B Street, 4th Floor
San Diego, CA 92101
Telephone: (877) 216-1552
E-mail: leo@moka.law

*Additional Counsel for New York Action Plaintiff Zalmon Uvaydov*

**SHUMAN, GLENN & STECKER**

By: ______________________________
Rusty E. Glenn
600 17th Street, Suite 2800 South
Denver, CO 80202

E-mail: rusty@shumanlawfirm.com

Brett D. Stecker
300 Countryview Drive
Bryn Mawr, PA 19010
Telephone: (303) 861-3003
E-mail: brett@shumanlawfirm.com

*Counsel for Delaware Chancery Action Plaintiff Roland Davies*